IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANITA DROBNY and SHELDON DROBNY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO.: 12-CV-5392 |
| | ) |
| JP MORGAN CHASE BANK, NA, et al. | ) Judge Robert M. Dow, Jr. |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Anita and Sheldon Drobny filed a *pro se* complaint arising out of two lawsuits that JP Morgan Chase Bank, NA ("Chase") filed in Lake County, Illinois, to foreclose the mortgage on their home. Plaintiffs contend that Chase's two foreclosure lawsuits were improperly filed because Chase failed to obtain a mortgage assignment from Washington Mutual Bank and because the note indorsement is "forged." Plaintiffs further complain that Chase failed to offer Ms. Drobny a mortgage loan modification after she applied several times and accuse Chase and its chief executive officer of "treating the [Washington Mutual Bank] mortgages different[ly] than those that originated from [Chase]," in order to avoid "the cost of servicing those loans and making modifications." Plaintiffs have named the following defendants: Chase, the alleged assignee of their mortgage, and Jamie Dimon, the CEO of Chase (collectively referred to as the "Chase Defendants"); Codilis & Associates, PC, the law firm that represented Chase in the foreclosure actions, and Ernest Codilis, the managing director of Codilis & Associates, PC (collectively referred to as the "Codilis Defendants"); the Federal Deposit Insurance Corporation ("FDIC"), which shuttered WaMu and transferred its loans to Chase; and Robert Schoppe, the FDIC receiver who executed an affidavit attesting to WaMu's assignment of

1

the mortgages to Chase. Plaintiffs assert federal claims under Sections 1962(a)-(c) of RICO as well as pendent state law claims of fraud, consumer fraud, and intentional infliction of emotional distress.

This matter is before the Court on two motions to dismiss filed by the Codilis Defendants [18] and the Chase Defendants [21]. Defendants seek dismissal of all claims brought against them. For the following reasons, the Court grants the motions [18 and 21] and dismisses Plaintiffs' complaint. At this time, the dismissal is without prejudice and subject to the further explanation set forth on pages 19 and 20 below.

**I.    Factual Background[1]**

On September 25, 2008, following Washington Mutual Bank's failure, JPMorgan Chase Bank ("Chase") acquired Washington Mutual Bank's "banking assets" from FDIC. (Cplt. ¶¶ 1-3.) According to the complaint, litigation between Washington Mutual Bank's "parent company" and Chase concerning the transaction continues. (*Id.* ¶¶ 4-9.) The FDIC's inspector general, the FBI, and others are "reportedly probing the sale" and other "bailouts" as well. (*Id.* ¶ 6.) Following the acquisition, in order for Chase to file foreclosure lawsuits more quickly and save costs, the FDIC and Chase failed to "properly transfer" the Washington Mutual Bank mortgages, and Chase further "chose to deny many reasonable modifications." (Cplt. ¶¶ 10, 11,

---

[1] The following facts are taken from Plaintiffs' complaint. The Court accepts the allegations in the complaint as true for present purposes. See, *e.g.*, *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004) (quoting *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000)). However, the exhibits to the complaint also may be considered, and if reliable, control contrary allegations in the complaint. See *Centers v. Centennial Mortgage*, 398 F.3d 930, 933 (7th Cir. 2005) (citations omitted). Although the Court gives *pro se* litigants wide latitude, they are not entitled to a general dispensation from the rules of civil procedure. See *Downs v. Westphal,* 78 F.3d 1252, 1257 (7th Cir. 1996). On the contrary, the United States Supreme Court has held: "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States,* 508 U.S. 106, 113 (1993).

37.) Consequently, certain undescribed foreclosure lawsuits – not involving Plaintiffs – were filed "without the required legal documentation or submitted with improperly forged assignments," which "resulted in homeowners unjustly losing their homes" and has "cost * * * the U.S. economy * * * trillions of dollars * * *." (Cplt. ¶¶ 12, 13.)

Plaintiffs are a married couple with more than eighty years' accounting experience between them. (Cplt. ¶¶ 22, 23, 44.) They further are "experts in the field of mortgage modifications." (*Id.*) Plaintiff Anita Drobny obtained a $680,000 mortgage loan originated by Washington Mutual Bank in 2007. (Cplt. ¶ 24.) In May 2009, due to adverse financial circumstances, Ms. Drobny requested to modify her mortgage loan from a fifteen-year amortization period to a thirty-year period, which meant that her monthly payment would be reduced and the term of her loan would be extended from 15 to 30 years. (Cplt. ¶¶ 25, 26.) Ms. Drobny completed a loan modification application, but Chase advised that it was not received, so she submitted another application in October 2009. (*Id.* ¶¶ 27, 28.) Chase advised that application also was not received, at which point Ms. Drobny wrote a complaint letter to her congresswoman. (*Id.* ¶¶ 29, 30.)

Ms. Drobny submitted a new application to Chase on December 21, 2009. (Cplt. ¶ 31.) Although a Chase representative alleged assured Ms. Drobny that the loan would be modified, Chase instead filed a foreclosure lawsuit against Ms. Drobny in May 2010. (*Id.* ¶¶ 30-33.)

Ms. Drobny's letter to her congresswoman, attached to Plaintiffs' complaint, contradicts Ms. Drobny's assertions that Chase failed to respond to her loan modification applications, then later promised to modify her loan. (Cplt. Exh. C.) According to the letter, which is dated December 2, 2009, Chase did inform her that her loan modification request was denied. (*Id.* Exh. C at 2, 3.) Among other things, Chase advised that Ms. Drobny's income was "insufficient

for the loan." (*Id.* at 3, 4.)  Although Ms. Drobny alleges that Chase later promised to modify her loan, she says she supplied "the same supporting documents that had previously been sent," *i.e.*, the materials that Chase reviewed when it denied her application a few weeks earlier for insufficient income.  (Cplt. ¶ 31; Exh. C at 2, 3.)

The first foreclosure complaint was signed by a Codilis lawyer and named both Anita and her husband Sheldon.  (*Id.* ¶ 33; Id. Exh. E at 2.)  According to the complaint, the May 2010 foreclosure complaint was "false" due to Chase's failure to receive and record an assignment of mortgage and because the indorsement was forged. (Cplt. ¶ 36.)  As to Ms. Drobny's mortgage, the instrument did not attach any assignment from Washington Mutual Bank to Chase, nor was any assignment recorded in Lake County, Illinois.  (Cplt. ¶ 33.)  As to Ms. Drobny's note, although the note does bear an indorsement in blank, the indorsement is "false" and is a "robo signed forger[y]," to aid in a "criminal enterprise."  (Cplt. ¶ 33.)  Someone either used a "signature stamp" or "photo shopped" the signature on the indorsement, without the signer's authority.  (*Id.* ¶ 37.)  Plaintiffs base their allegations regarding the indorsement on an unattributed "determin[ation]" that "[t]he signature stamp for the blank endorsement by Cynthia A. Riley has been reported as the one most commonly used by the people that forged that endorsement." (*Id.* ¶¶ 33, 36.)  Eventually these "legal deficiencies" let to a "voluntary dismissal of the complaint" without prejudice (*Id.* ¶ 42.)

The Codilis Defendants allegedly falsely stated at ¶ 3(N) of the foreclosure complaint that Chase had the capacity to foreclose as mortgagee, but Chase was not actually WaMu's assignee because it had not received or a recorded an assignment of the mortgage.  According to the complaint, the Codilis Defendants knew or should have known that Riley's blank endorsement was a forgery because only the FDIC could make a blank endorsement.  The

4

Codilis Defendants knew that Chase "never intended to get assignments and make recordings for several million mortgages that were owned and serviced" by WaMu. (Doc. # 1 ¶¶ 37-38). Chase and "their attorneys"—the complaint does not specify whether attorneys other than the Codilis Defendants were involved—improperly foreclosed upon thousands of mortgages. Chase and its attorneys effectuated the improper foreclosures by using telecommunications and the U.S. Mail to have "complaints and briefs sent to the many defendants."

Following the voluntary dismissal of the May 2010 foreclosure, Ms. Drobny again attempted to have Chase modify the mortgage with the assistance of two agencies. (Cplt. ¶ 43.) However, Chase "failed to approve or disapprove" the application. (Id. ¶ 44.) Based on the foregoing, Plaintiffs believe that Chase is "treating the [Washington Mutual Bank] mortgages different[ly] than those that originated from [Chase]," in order to avoid "the cost of servicing those loans and making modifications." (*Id.* ¶ 45.)

In March 2012, Chase filed a second foreclosure lawsuit against the Drobnys, also signed by the Codilis Defendants. (Cplt. ¶ 46; *Id.* Exh. G.) The complaint attached an affidavit prepared by Robert C. Schoppe of the FDIC, attesting that the FDIC sold the WaMu mortgages to Chase. (*Id.* ¶ 46; Exh. F.) According to Plaintiffs' complaint in this lawsuit, the affidavit "has no force of law in Illinois or any other state" and was "intended to prove that the mortgage was legally owned by [Chase] despite the forged endorsement and lack of assignment." (*Id.* ¶¶ 46, 47.) By signing the affidavit, Schoppe facilitated Chase's "criminal enterprise"; by using the affidavit, Chase meant to deceive "the courts and the thousands of foreclosures [sic] they were planning to pursue." (*Id.*)

Plaintiffs contend that Chase's foreclosure actions destroyed their credit and caused damages exceeding $10,000,000. In Count I ("RICO Section 1962(a)"), Plaintiffs contend that

all Defendants "conducted and participated in the conduct of their affairs through a pattern of racketeering activity," all related by purpose, victims and participants, in violation of §§ 1962(a) and 1962(c) of RICO. (Cplt. ¶¶ 48, 51, 52.) Plaintiffs continue that "these illegal acts were accomplished by use of the United States Mail and through telecommunications," and that Chase is a "continuing enterprise" which is "separate and distinct from the pattern of racketeering activity * * *." (*Id.* ¶¶ 40, 49.) The allegedly illegal acts occurred over a period of years through Chase's "mortgage acquisition of [Washington Mutual Bank] from the FDIC," as "facilitated by use of the United States mails and wires * * * in violation of 18 U.S.C. §§ 1341 and 1343." (*Id.* ¶¶ 50, 51.) In Count II ("RICO Section 1962(b)"), Plaintiffs allege that Jamie Dimon, as "Chairman and CEO of [Chase], supervised and orchestrated the corrupt activities of [Chase]." (Cplt. ¶ 53.) Plaintiffs repeat that the previously described conduct "had the same purpose, the same participants, and the same victims," was "facilitated by use of the United States mails and wires," and "constituted a pattern of racketeering activity." (*Id.* ¶¶ 53, 54.) As a result, Plaintiffs say, Chase "has falsely foreclosed Anita's residence," in violation of § 1962(b) of RICO. In Count III, Plaintiffs allege that the Codilis Defendants and Robert Schoppe violated § 1962(c) by conspiring to help Chase conduct its racketeering activities in violation of RICO. Counts IV-VI are pendent state law claims for fraud, intentional infliction of emotional distress, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq.

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citations omitted). To survive a Rule 12(b)(6) motion to dismiss, a complaint must satisfy the requirements of Rule 8. Fed. R. Civ. P. 8. First, the complaint must

6

provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 550 U.S. at 579-80. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, quotation marks, and brackets omitted).

Where a complaint sounds in fraud, the allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing *Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004)). Rule 9(b) states that for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino*, 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b), read in conjunction with Rule 8, requires that the plaintiff plead "the time, place and contents" of the purported fraud. *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F. Supp. 720 (N.D. Ill. 1993). "The purpose of this heightened pleading

requirement is to 'force the plaintiff to do more than the usual investigation before filing his complaint.'" *Amakua Dev. LLC v. H. Ty Warner*, 411 F. Supp. 2d 941, 953 (N.D. Ill. 2006) (citations and internal quotation marks omitted).

Plaintiffs base their RICO claim on allegations of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. Insofar as Rule 9(b) applies to all "averments of fraud," and not simply stand-alone claims of fraud, Plaintiffs' RICO claim will be viewed under the heightened pleading standard of Rule 9(b). *Borsellino*, 477 F.3d at 507 (citations and internal quotation marks omitted); *Limestone Dev. Corp. v. Village of Lemont, Illinois*, 520 F.3d 797 (7th Cir. 2008) (requiring for RICO claim "a fuller set of factual allegations" to satisfy 9(b) and to show that claim is not "largely groundless"). There is a split of authority concerning whether Rule 9(b) must be satisfied with respect to every element of a fraud-based RICO claim, or whether the less rigorous Rule 8 pleading standard applies to non-fraud elements of the claim. Compare *In re Sumitomo Copper Litig.*, 95 F. Supp. 451, 454-56 (S.D.N.Y. 1998) (finding that RICO enterprise allegations must meet only pleading requirement of Rule 8 but wire and mail fraud allegations must meet heightened pleading requirements of Rule 9(b)); *Am. Ins. Serv. v. S. Kornreich & Sons, Inc.*, 944 F. Supp. 240, 246-47 (S.D.N.Y. 1996) (holding that "enterprise," "control," and "conspiracy" allegations need not be pleaded with particularity); and *Gubitosi v. Zegeye*, 946 F. Supp. 339, 346 n.4 (E.D. Pa. 1996) (holding that "Fed. R. Civ. P. 9(b) does not require that allegations of conspiracy be alleged with particularity; only allegations of fraud have this requirement under the rule"); with *Brannon v. Boatmen's Bancshares, Inc.*, 952 F. Supp. 1478, 1482 (W.D. Okla. 1997) (ruling that each element of RICO violation must be pleaded with particularity, citing *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992)). The Seventh Circuit has not expressly resolved the question. It has, however, explicitly

applied Rule 8 to the enterprise element of RICO in at least one case. See *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (ruling that amended complaint alleging a RICO violation "is so scanty and its allegations [as to enterprise] so vague that it * * * fails to satisfy the notice requirement of Rule 8"). The Court therefore will apply Rule 8 to the non-fraud elements of RICO and Rule 9(b) to the allegations of fraud-based racketeering acts.

**III. Analysis**

Plaintiffs' complaint sets forth three federal civil RICO claims as well as various state and common law claims against Defendants. Defendants have moved to dismiss Plaintiffs' RICO claims, arguing that Plaintiffs failed to sufficiently plead a RICO violation. Even before turning to the specifics of the federal RICO claims, there are obvious problems with Plaintiffs' grievances regarding Ms. Drobny's mortgage loan.

First, as to Chase's failure to supply a mortgage assignment, there is no such requirement, as made clear both by federal and state law. Federally, the FDIC, as receiver of Washington Mutual Bank, was empowered to transfer the Bank's assets without an assignment.[2] See 12 U.S.C. § 1821(d)(2)(G)(i)(II) (receiver may "transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer"); *FTBK Investor II v. Mercy Holding*, 2012 WL 3064864 at *5 (N.Y. Sup. Ct. July 24, 2012) (citing 12 U.S.C. § 1821(d)(2)(G)(i)(II) and rejecting borrowers' argument "that the note had to have been individually negotiated and physically indorsed to Chase [by the FDIC] through an allonge"). Turning to state law, again, no

---

[2] Plaintiffs allege Chase acquired Washington Mutual Bank's "banking assets" on September 25, 2008. (Cplt. ¶ 3.) The sale was accomplished through a purchase and assumption agreement, which is posted on the FDIC's website (www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf) and may be judicially noticed. See, *e.g.*, *Tirado v. U.S. Bank, N.A.*, No. 12–cv–00122–RMW, 2012 WL 692599 at *1 (N.D. Cal. March 2, 2012) (taking judicial notice of information contained on FDIC's website).

assignment is required. Chase has standing to foreclose as the holder of the in-blank indorsed note, and no assignment recording requirement exists. *See* 810 ILCS 5/3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); 810 ILCS 5/9-313(a) (perfection of security interest in negotiable interests by possession); Black's Law Dictionary 789 (8th ed. 2004) (a note with blank indorsement is "payable to the bearer"); 810 ILCS 5/9-203(g) ("[t]he attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien"); and *Federal National Mortgage Ass'n v. Kuipers*, 732 N.E.2d 723, 729 (Ill. App. Ct. 2000) (no recording requirement for mortgage assignments in Illinois). Although Plaintiffs insist that federal law requires a mortgage assignment, the cited statute itself, and cases applying the statute, squarely refute that argument. See, *e.g.*, *Stehrenberger v. JPMorgan Chase Bank*, 2012 WL 5389682 at *1-*2 (S.D. Ohio Nov. 2, 2012) (rejecting as "frivolous" plaintiff's argument that each Washington Mutual Bank mortgage loan acquired by Chase from the FDIC was required to be "individually identified" pursuant to Section 1821(d)(2)(G)(i)(II); "[c]ourts have * * * consistently held that Chase became the owner of WaMu's loans and loan commitments by operation of law and have rejected any arguments that Chase is not entitled to enforce the acquired WaMu loans") (citing cases).

Second, Plaintiffs' allegations regarding the "forged" or "robo signed" note indorsement are speculative. Plaintiffs contend there is an unattributed "determin[ation]" that the signature of the person making the indorsement, Cynthia A. Riley, was "one of many robo signed forgeries

10

by [Chase] to aid in [its] criminal enterprise." Plaintiffs rely on unidentified "reporting" by unidentified people for the proposition that Ms. Riley's name is commonly forged: "[t]he signature stamp for the blank endorsement by Cynthia A. Riley has been reported as the one most commonly used by the people that forged that endorsement." Plaintiffs also conclude incorrectly that the indorsement must be forged because "only the FDIC could have made such a blank indorsement," when in fact a note may be indorsed by its holder. 810 ILCS 5/3-205(b).

To bolster their allegations, in their response brief, Plaintiffs contend that the indorsement may have been forged because the FDIC "already owned the mortgages after it seized WAMU's assets," so the indorsement was "unnecessary." Plaintiffs continue that the indorsement was "undated," which somehow "adds suspicion * * * because * * * the date the FDIC took over WAMU was a key date regarding WAMU's authority to endorse the mortgage note." Though it "is possible" the indorsement is authentic, Plaintiffs go on, it is "unlikely that WAMU immediately blank endorsed every mortgage it owned before any transfer." Plaintiffs further assert there are other court cases challenging indorsements as "fabrications" or "photo-shopped" and that a foreclosure defense attorney complained of improper "foreclosure affidavits" in a television interview. Plaintiffs conclude that the challenged indorsements were part of a "scheme to give the illusion of authentic transfer and mislead courts as well as victims."

Although Plaintiffs claim that their forgery allegations have a reasonable basis, Plaintiffs confuse their obligation to state a "plausible" claim with the obligation to allege *actual facts*, not merely facts that may "plausibly" be true. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); see also *White v. Mercado*, 2011 WL

1398502 at *3 (N.D. Ill. April 8, 2011) (concluding that plaintiff "has failed to present facts which suggest a plausible claim"). Here, instead of pleading facts, Plaintiffs speculate that the indorsement is forged, because they appear not to have facts as to why or when the indorsement was made. Such pleading-by-guesswork is improper.[3] See, *e.g., Neuman v. U.S.*, 2008 WL 3874821 at *5 (S.D. Ill. Aug. 19, 2008) (dismissing complaint and rejecting plaintiff's request for discovery following plaintiff's acknowledged "uncertainty" regarding his allegations); see also *E.E.O.C. v. Concentra Health Services*, 496 F.3d 773, 776 (7th Cir. 2007) (allegation of complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 569 n.14 (2007)); *Najieb v. Chrysler-Plymouth*, 2002 WL 31906466 at *9 (N.D. Ill. Dec. 31, 2002) (forgery must be pled with particularity).

Third, and perhaps most troubling, are Plaintiffs' allegations regarding Chase's failure to offer a modification of Ms. Drobny's loan. According to the complaint, Ms. Drobny applied for a loan modification several times, was initially ignored, and then eventually was "assured" by a Chase employee that her loan would be modified, but Chase instead filed a foreclosure lawsuit. However, according to Ms. Drobny's December 2, 2009 letter to her congresswoman, which was attached to Plaintiffs' complaint, Chase did inform her that her loan modification request was denied. Among other things, Ms. Drobny states in her letter that Chase advised that Ms. Drobny's income was "insufficient for the loan." Thus, the allegation that Ms. Drobny applied for a loan modification just a few weeks later, on December 21, 2009, with "the same supporting documents that had previously been sent" and expecting a different result, casts considerable doubt on Plaintiffs' claims.

---

[3] Even if Plaintiffs' allegations were not deemed too speculative, as demonstrated below, Plaintiffs' federal RICO claims fall far short of meeting the pleading standards.

12

In their response brief, Plaintiffs acknowledge that Chase did deny Ms. Drobny's loan modification after all. Plaintiffs now claim that the denial was "verbal" and not "formal" and further was "in violation of the Home Affordable Modification Program (HAMP) criteria." Because an "incompetent" Chase representative "misled" Ms. Drobny regarding the HAMP income criteria and denied the application in violation of those criteria, Chase should be "subject to harsh penalties." Plaintiffs cannot rescue their complaint with new, conflicting assertions in their response brief. See, *e.g., Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (concluding that the plaintiffs' attempt to supplement the complaint in his briefing by stating that the details of the implied contract, which do not appear in his complaint, are contained in various unnamed academic bulletins "is fruitless"). In any event, even accepting these new allegations, as demonstrated below, Plaintiffs have failed to state a federal RICO claim.

### A. RICO Claims

A RICO claim "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Jones v. U.S. Bank Nat. Ass'n*, 10 C 0008, 2012 WL 899247, *3 (N.D. Ill. Mar. 15, 2012) (quoting *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir. 2006)). Count I cites both § 1962(a) and (c). To state a claim under § 1962(a), the plaintiff must allege that a defendant: "(1) received income from a pattern of racketeering activity; (2) used or invested that income in the operation of an enterprise; and (3) caused the injury complained of by the use or investment of racketeering income in an enterprise." *Jones*, 2012 WL 899247, at *3. Section 1962(c) requires a showing of "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." Count II cites § 1962(b), which requires a plaintiff to allege that the defendants, "through a pattern of racketeering activity[,] * * * acquire[d] or maintain [ed] * * *

13

any interest in or control of any enterprise which is engaged in * * * interstate or foreign commerce." 18 U.S.C. § 1962(b); *Starfish Inv. Corp. v. Hansen,* 370 F. Supp. 2d 759, 780 (N.D. Ill. 2005).; *Stone v. Washington Mut. Bank*, 2011 WL 3678838, at *10 (N.D. Ill. Aug. 19, 2011). Count III cites § 1962(d), which prohibits entering into a conspiracy to violate any of the other subsections of § 1962. *Id.* As demonstrated below, Plaintiffs have failed to allege RICO violation because they do not plead predicate acts of racketeering, a pattern of such activity, an injury by reason of a RICO violation, or a RICO enterprise. Further, Count III fails because it is derivative of Count I.

In order to establish a RICO claim based on a "pattern of racketeering activity," a plaintiff must plead at least two separate predicate acts of racketeering within a 10–year time period. 18 U.S.C. § 1961(5); *Jones*, 2012 WL 899247, *5. Where, as here, mail or wire fraud is the predicate act of a mortgagor's RICO claim, each element necessary to show mail or wire fraud must be alleged with the particularity and specificity required by Rule 9(b). *Id.* (quoting *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001)). This requires them to show: (1) the defendants' participation in a scheme to defraud; (2) the defendants' intent to defraud; and (3) the defendants' use of the mail in furtherance of the scheme to defraud. See *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1005 (7th Cir. 2004). The words "to defraud" in the mail fraud context mean "wronging one in his property rights by dishonest methods or schemes" and "usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." *Id*. The complaint "must go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communication perpetrating the fraud." *Jones*, 2012 WL 899247, *5; *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 994-97 (N.D. Ill. 2010). Moreover, "in a case involving multiple defendants * * * 'the

14

complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Freedom Mortg. Corp.*, 720 F. Supp. 2d at 994-97.

Plaintiffs fail to plead that Defendants committed predicate acts of mail or wire fraud for three reasons. First, "filing and prosecuting a complaint is not considered mail or wire fraud or a predicate act under RICO." *Carthan-Ragland v. Standard Bank & Trust*, 11 C 5864, 2012 WL 1658244 (N.D. Ill. May 11, 2012) (holding that sending false documents in support of foreclosure proceeding did not constitute predicate act under RICO); *Harris Custom Builders, Inc. v. Hoffmeyer*, 1994 WL 329962, *3-4 (N.D. Ill. July 7, 1994) ("alleged scheme of filing lawsuits to enforce an allegedly illegally obtained copyright does not constitute a predicate act of racketeering for purposes of RICO"). Even assuming that Defendants knew that the foreclosure complaints were false, they would have intended to deceive the Lake County court, not Plaintiffs. This is insufficient under RICO because one cannot commit mail or wire "fraud by fooling one person to receive something of value from another." *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 257 F. Supp. 2d 819, 830-31 (M.D. La. 2002) (citing *United States v. Pendergraft*, 297 F.3d 1198, 1208-09 (11th Cir. 2002)). Plaintiffs cannot establish predicate acts of racketeering based on the false statements allegedly contained in foreclosure complaints and supporting documents.

Second, Plaintiffs do not allege predicate acts of mail and wire fraud because they admit that they did not detrimentally rely upon the alleged fraud. When mail fraud forms the basis for a RICO claim, the claim fails unless the plaintiff establishes that "a person of ordinary prudence and comprehension would rely on the misrepresentations." *Associates In Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir. 1991); see also *Corley*, 388 F.3d at 1009 (statement upon which no reasonable person could rely does not amount to wire or mail fraud for

purposes of RICO). Far from alleging that they relied on any statement made by Defendants, Plaintiffs admit that they moved to dismiss the foreclosure action, arguing that Chase had not received an assignment of their loan, contrary to the representation in its complaint. Because they did not rely, there was no fraud.

Plaintiffs also cannot establish fraud because the complaint exhibits show that the Chase was the assignee of their mortgage. The affidavit of the FDIC receiver, Robert Schoppe, states that "JP Morgan chase acquired * * * all loans and all loan commitments, of Washington Mutual * * * * [O]n September 25, 2008, JP Morgan Chase became the owner of the loans and loan commitments of Washington Mutual." "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454-55 (7th Cir. 1998)

Even more glaringly, Plaintiffs fail to allege predicate acts of mail or wire fraud because they do not allege fraud with particularity under Rule 9(b). They do not allege when the false documents were transmitted, who mailed or wired them, or why they believe that person had an intent to defraud. The complaint includes nothing beyond "loose references" to serving misleading documents by mail; it does not identify which Defendants committed which acts of fraud or why they had an intent to defraud. Plaintiffs thus fail to plead wire and mail fraud with particularity. See *Freedom Mortg. Corp.*, 720 F. Supp. 2d at 994-97; *Davis v. Wells Fargo Bank*, 2008 WL 1775481, at *7 (N.D. Ill. Apr. 17, 2008); *Stanley v. Select Portfolio*, 2008 WL 2020509, at *5 (S.D. Ill. May 9, 2008).

Furthermore, a single alleged scheme targeted at one victim is not a "pattern of racketeering activity," even if the alleged scheme required several acts of mail and wire fraud to inflict the injury. *Slaney,* 244 F.3d at 599 (7th Cir. 2001); *Ashland Oil, Inc. v. Arnett,* 875 F.2d

1271, 1278-79 (7th Cir. 1989); *Lipin Enterprises, Inc. v. Lee,* 803 F.2d 322, 324 (7th Cir. 1986) (multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern). While Plaintiffs make conclusory references to "thousands of foreclosures," the only scheme that is set forth in any detail in the complaint is Chase's allegedly improper attempt to foreclose on Plaintiffs' own mortgage. This purported scheme does not rise to the level of "a pattern of racketeering activity" because Plaintiffs are the sole victims. *Slaney*, 244 F.3d at 599; *Lipin Enterprises, Inc.,* 803 F.2d at 324; *Ashland Oil, Inc.,* 875 F.2d at 1278-79.

Finally, a RICO complaint must identify the enterprise. *Crichton v. Golden Rule Ins. Co.,* 576 F.3d 392, 398 (7th Cir. 2009). Plaintiffs' complaint does not describe the organizational structure or hierarchy of the alleged RICO enterprise. See *Stachon v. United Consumers Club, Inc.,* 229 F.3d 673, 675-77 (7th Cir. 2000). Nor does it describe what role each of the six Defendants played in the purported enterprise. For each Defendant, the complaint must plead that the defendant had some part in directing or conducting the alleged "enterprise" such that it participated in the operation or management of the enterprise itself. *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993). Plaintiffs allege no details about each Defendant's role in the enterprise; their conclusory allegations of a RICO enterprise are insufficient under Rule 8. *Iqbal,* 129 S.Ct. at 1949.[4]

In sum, while Plaintiffs insist that their RICO allegations are sufficient, the complaint fails to identify predicate acts, does not describe any pattern, and does not identify each

---

[4] The complaint presents additional obstacles unique to two cited RICO sections. First, any claim based on § 1962(a) fails for the further reason that the complaint does not allege receipt of income from a pattern of racketeering activity, and the use of that income in the operation of an enterprise. *Stone,* 2011 WL 3678838 at *10-11. Second, any claim based on § 1962(c) fails because the complaint impermissibly identifies Chase as defendant and the RICO enterprise at the same time. See *Dickson v. Chicago Allied Warehouses*, 1991 WL 60571 at *5 (N.D. Ill. Apr. 15, 1991) ("under § 1962(c), the plaintiff must show that the enterprise and the defendant are different entities").

Defendant's role in the enterprise. Only boilerplate recitations are supplied, followed by the assertion of a conspiracy to avoid the cost of servicing Washington Mutual's loans and making modifications. These allegations are not enough to state a cause of action under RICO.

## B. State Law Claims

In their complaint, Plaintiffs allege that this action arises under RICO and that the Court has supplemental jurisdiction over the claims arising under Illinois law pursuant to 28 U.S.C. § 1367. Plaintiff further alleges that venue is proper in this district because all of the Defendants reside and transact their affairs in this district.[5]

Plaintiffs have not stated a federal claim, and the Court must now decide whether to retain jurisdiction over their state law claims. See 28 U.S.C. § 1367(c)(3). The Seventh Circuit, animated by the principle of comity, consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly,* 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.,* 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir. 1993); see also *Wright v. Associated Ins. Co.,* Inc., 29 F.3d 1244, 1251 (7th Cir. 1994) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction * * * "); see also *Horton v. Schultz,* 2010 WL 1541265, at *4 (N.D. Ill. 2010).

---

[5] In order for diversity jurisdiction to exist, each defendant must be a citizen of a different state from each plaintiff. See *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff") (emphasis in original). Based on the representations in their complaint, Plaintiffs are from Illinois. It seems quite likely, even if the Court were to disregard the allegations in Plaintiffs' complaint, that, at a minimum, the Codilis Defendants, located in Burr Ridge, Illinois, also are citizens of Illinois, thereby destroying diversity jurisdiction.

In *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251–53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine judicial economy, convenience, fairness, and comity-will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13–217; *Davis v. Cook County,* 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice of the state law claims also is appropriate here because the case is only at the motion to dismiss stage and substantial judicial resources have not been committed to the eight state law counts in Plaintiffs' complaint. *Wright,* 29 F.3d at 1251. Finding no justification for departing from that "usual practice" in this case, the Court dismisses without prejudice Plaintiff's state law claims without discussing their merit under state law.

\* \* \*

Based on the foregoing discussion, all of Plaintiffs' claims, at least as currently cast, are subject to dismissal. Plaintiffs whose complaints are dismissed through a successful Rule 12(b)(6) motion generally are allowed an opportunity to replead. See, *e.g.*, *Smith v. Union Pac. R. Co.*, 474 Fed. Appx. 478, 481 (7th Cir. Apr. 5, 2012). Because Plaintiffs are *pro se*, the Court has spelled out in considerable detail both the legal requirements for Plaintiffs' federal causes of and the ways in which their current complaint falls short of the mark. If, consistent with Federal Rule of Civil Procedure 11, Plaintiffs believe that they could amend their complaint to state a federal cause of action, they may do so within 21 days. Plaintiffs are cautioned that even though

19

they are *pro se* litigants, the strictures of Rule 11 still apply to their pleadings. See *Downs v. Westphal,* 78 F.3d 1252, 1257 (7th Cir. 1996). Accordingly, if their amended complaint contains the same defects as to the federal claims—indeed, the current complaint falls far short of stating a federal RICO claim—they may face a monetary sanction for pursuing a frivolous lawsuit and causing Defendants to incur additional attorneys' fees in litigating a second motion to dismiss. If Plaintiffs decide not to file an amended complaint within 21 days, their federal claims will be dismissed with prejudice and the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss them without prejudice.

## IV. Conclusion

For these reasons, the Court grants the motions to dismiss [18 and 21] filed by the Codilis Defendants [18] and the Chase Defendants [21]. Plaintiffs' federal claims are dismissed with leave to replead within 21 days if they believe that they can cure the pleading deficiencies identified above. If Plaintiffs decide not to replead, Plaintiffs' federal claims will be dismissed with prejudice and the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss those claims without prejudice.

Dated: March 8, 2013

_____
Robert M. Dow, Jr.
United States District Judge